RILEY, Chief Judge,
dissenting.
I respectfully dissent. At oral argument, the government conceded, as it *443 should, that the district court applied the wrong legal standard in denying Monson’s motion for attorney fees. The Supreme Court has said “[a] district court by definition abuses its discretion when it makes an error of law.” Koon v. United States, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). For this reason, I would reverse.
One of the primary issues raised in Monson’s brief is whether the district court “applied] an incorrect legal standard to the fee application in this case.” The majority does not answer Monson’s question, ignoring the district court’s legal analysis except to remark that “[t]he district court denied the motion.” Ante at 438. I would join issue with all arguments presented for our review.
In its order denying Monson’s motion for attorney fees, the district court held:
[WJhen the Complaint and Indictment were filed, probable cause existed for the government’s prosecution. The prosecution was not malicious or dishonest or, in the words of the statute, “vexatious, frivolous, or in bad faith.” The government articulated a reasonable position with respect to the suppression issue. Although the government’s actions were, in [the magistrate judge’s] words, “at the very minimum a reckless disregard” and more than negligent, they were not a reckless disregard “for the truth.” Therefore, the government’s conduct falls far short of the high standard required for an attorney fee award under the Hyde Amendment.
(footnote and citation omitted). The government did not argue such a distinction before the district court. The district court sua sponte premised its denial of Monson’s motion on a distinction between a mere “reckless disregard” (which would not support an award of fees) and “a reckless disregard for the truth” (which might).
At oral argument, I asked the government, if its prosecution of Monson did not involve “a reckless disregard ‘for the truth,’ ” then what did the government “recklessly disregard”? The government responded the district court’s proposed distinction was illusory and the “reckless disregard” in the underlying Franks proceedings was, in fact, “a reckless disregard for the truth.” The government thereby recognized the district court applied the wrong legal standard in denying Monson’s motion, and later in the argument, the government expressly conceded in response to another question that the district court did apply the wrong legal standard.
The phrase “reckless disregard” in the context of a Franks hearing is shorthand for “reckless disregard for the truth.” See, e.g., Franks v. Delaware, 438 U.S. 154, 171-72, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (referring to “reckless disregard”). In the underlying Franks proceedings here, the district court characterized the magistrate judge’s order as finding the two law enforcement officers acted with, “ ‘at the very minimum,’ a reckless disregard for the truth.”
Ordinarily I would defer to the district court’s ultimate conclusion to deny Mon-son’s motion for attorney fees. See United States v. Beeks, 266 F.3d 880, 883 (8th Cir.2001) (per curiam) (reasoning the Hyde Amendment’s permissive language and “the district courts’ unique familiarity with the litigation” support deference on appeal). As the majority explains, there are compelling reasons why the district court might exercise its discretion to deny the motion. See ante at 440-42. The problem is the district court, in creating an untenable distinction between “a reckless disregard” and “a reckless disregard for the *444 truth,” made an error of law. Therefore, the district court abused its discretion and reversal is required unless the error of law is harmless.
I cannot say on the present record the district court’s error of law was harmless. I reach this conclusion for two reasons.
First, it appears the district court was under the misapprehension that “conscious dishonesty” is necessary to recover under the “bad faith” prong of the Hyde Amendment. See United States v. Monson, No. 8:08CR388, 2010 WL 1949577, *2 (D.Neb. May 12, 2010) (“ ‘Bad faith’ connotes more than bad judgment or negligence, and refers to ‘conscious dishonesty.’ ”). Although “conscious dishonesty” qualifies as “bad faith,” “bad faith” does not require a showing of “conscious dishonesty.” Cf. ReliaStar Life Ins. Co. v. IOA Re, Inc., 303 F.3d 874, 882 (8th Cir.2002) (defining “bad faith,” in part, as “deliberate deception, gross negligence or recklessness” (emphasis added) (quotation omitted)); Trulis v. Barton, 107 F.3d 685, 694 (9th Cir.1995) (defining “bad faith” for purposes of a sanctions award under 28 U.S.C. § 1927, in part, as “when an attorney knowingly or recklessly raises a frivolous argument” (quotation omitted)). Consistent with this misapprehension, at oral argument, the government attempted to excuse the district court’s application of the wrong legal standard as a “typographical” error and urged us to substitute “intentionally” for “reckless disregard for the truth” in the district court’s order.[7]
Second, there are material facts in the record from which a reasonable trier of fact could hold “the position of the United States” was “in bad faith.” See Pub.L. No. 105-119, 11 Stat. 2440, 2519 (1997). In addition to the three sets of false or misleading statements or omissions, leading the district court to hold there was a Franks violation in the underlying criminal case, see ante at 438,[8] there is evidence the *445 law enforcement officers failed to apprise the state judge who issued the warrant of many other important facts.[9] The United States typically is responsible for the knowledge and actions of state law enforcement officers acting on its behalf. Cf. Kyles v. Whitley, 514 U.S. 419, 437-38, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Evidence exists that the prosecutor knew, or should have known, of the law enforcement officers’ material falsehoods and omissions yet pursued an indictment against Mon-son.[10] The government’s resistance to the Franks motion arguably lacked basis in law or fact. For example, the prosecutor excused the search warrant application as nothing more than a “very poorly written” attempt at an anticipatory warrant by “unseasoned officers,” when one of the law enforcement officers had more than a decade of experience, including teaching drug investigation at the Nebraska Law Enforcement Training Center.[11]
The district court’s legal error, and resulting abuse of discretion, is not harmless. For the foregoing reasons, I would reverse and remand to the district court to reeonsider the merits of Monson’s motion under the proper legal standard.

. The majority says "Monson does not argue that the prosecution against him was in bad faith” and "during oral argument, Monson's attorney expressly stated that he was not arguing that the prosecution against Monson was in bad faith.” Ante at 439 & n. 3. The majority too narrowly construes Monson’s argument. In his motion for Hyde Amendment attorney fees, Monson argued in the district court, "the position of the United States was vexatious, frivolous, or in bad faith.” The district court acknowledged "Monson argues that the government’s position was vexatious, frivolous, or in bad faith.” Although Mon-son’s arguments on appeal are not a model of clarity, Monson contends the district court applied the wrong legal standard, insisting "[rjecklessness ... will support a Hyde Amendment fees request,” citing Franks, 438 U.S. at 171, 98 S.Ct. 2674, and identifies recklessness as sufficient proof of bad faith. After initially saying he was not arguing bad faith at oral argument, which the majority highlights in its footnote 3, Monson’s attorney retracted that apparent concession, saying "all of those [vexatious, frivolous, or in bad faith] could be satisfied by a reckless disregard.” Thus, the majority’s representations that Monson did not argue bad faith in his brief or in his oral argument are in error.

. The majority does not explain why the government "had a non-frivolous argument that this false statement regarding the date of the meeting did not result in the search warrant violating Franks ” or why, ”[e]ven if this date is excised, ... [the] affidavit still contains more than enough information to establish probable cause for searching Monson’s residence.” Ante at 441. As the magistrate judge recognized, the timing of the prior meeting was important: if the meeting occurred months earlier than law enforcement officers represented in the search warrant application, the government’s argument that its intelligence on Monson was not stale was undermined. The law enforcement officers did not attempt to verify Housh’s story, and a reasonable investigation could have discovered that Monson was out-of-state from September 9 through September 15, 2008.

. The fact finder could find the omitted material information includes: (1) Housh was an unreliable informant with a significant criminal history, including convictions for crimes of dishonesty; (2) Housh was on probation at the time of the controlled buy, and it was illegal for Housh to possess a firearm under 18 U.S.C. § 922(g); (3) Monson had no criminal history; (4) Detective Nelson had examined the Tech 9 in August 2007 in an undercover capacity and knew the Tech 9 was not automatic or otherwise illegal, yet the Tech 9 is described in the search warrant as "dirty”; (5) in August 2007, Monson had refused to trade the Tech 9 for marijuana; and (6) it was well-known within the local community that Monson wanted cash because his wife was dying of cancer. Further, one of the law enforcement officers has a conviction for a misdemeanor crime of dishonesty, and a reasonable fact finder could discredit the officer’s testimony.

. The prosecutor does not dispute she discussed the case with the law enforcement officers before seeking the indictment. The prosecutor possessed the search warrant and application and recordings of telephone calls between Housh and Monson — pieces of evidence which are, to varying degrees, inconsistent with each other, as well as inconsistent with the law enforcement officers’ stories.

. At oral argument, the prosecutor said the law enforcement officers "had no idea what they were doing” and "had never written an anticipatory search warrant before.”